## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| RAINEE SIMPSON, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 14-00288-N |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Social Security Claimant/Plaintiff Rainee Simpson ("Simpson") has brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her protective application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* By the consent of the parties (*see* Doc. 25), the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (*See* Doc. 26).

Upon consideration of the parties' briefs (Docs. 16, 19), the administrative record (Doc. 13) (hereinafter cited as "(R. [page number(s)])"), and the arguments of counsel made at the hearing held March 6, 2015, the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

## I.    Procedural Background

On April 29, 2011, Simpson protectively filed an application for SSI with the

Social Security Administration ("SSA"),[1] alleging disability beginning May 15, 2006.[2]  After her application was initially denied on July 27, 2011, Simpson requested a hearing on her application, which was held in Mobile, Alabama, before an Administrative Law Judge ("ALJ") on September 17, 2012.  (R. 27).

On November 29, 2012, the ALJ issued an unfavorable decision on Simpson's application, finding her "not disabled" under the Social Security Act.  (*See* R. 24-44).  Simpson requested review of the ALJ's decision by the Appeals Council for the SSA's Office of Disability Adjudication and Review (R. 21-22) and submitted additional evidence for the Appeals Council's consideration (R. 15-19).  On May 15, 2014, the Appeals Council issued its decision denying Simpson's request for review.  (R. 1-6).

On June 23, 2014, Simpson filed this action under § 1383(c)(3) for judicial review of the Commissioner's final decision.  (Doc. 1).   *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council."); 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be

---

[1] "SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. 1382(a), 1382c(a)(3)(A)-(C)."  *Sanders v. Astrue*, Civil Action No. 11-0491-N, 2012 WL 4497733, at *3 (S.D. Ala. Sept. 28, 2012).

[2] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.  20 C.F.R. § 416.202–03 (2005)."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.").[3]

## II.   Standard of Review

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' "  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).  " 'Even if the evidence preponderates against the

---

[3] The record reflects that Simpson resides in this judicial district.  Thus, venue is proper in this Court.  *See* 42 U.S.C. § 405(g) ("Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business…").

[Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). "In determining whether substantial evidence exists, [a court] must...tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Moreover, "[t]here is no presumption...that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid. Instead, [the court] conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)) (internal citation omitted). In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*,

363 F.3d 1155, 1158–59 (11th Cir. 2004).").  " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).

> Eligibility for…SSI requires that the claimant be disabled. 42 U.S.C. §…1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §…1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. Feb. 11, 2015) (per curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014).  *See also Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) ("Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants.").

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a plaintiff proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the plaintiff is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, but importantly, although "the [plaintiff] bears the burden of demonstrating the inability to return to [his or] her

---

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

"When no new evidence is presented to the Appeals Council and it denies review, then the administrative law judge's decision is necessarily reviewed as the final decision of the Commissioner, but when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

### III.   Claims on Judicial Review

**Claim 1** –   The ALJ "erred in assigning no weight to the medical opinion provided by the Plaintiff's long-standing psychiatrist, Dr. George Davis, while according significant weight to the opinions provided by the one examining physician and two non-examining physicians."

**Claim 2** -   The ALJ "erred in finding that the Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms not credible."

(Doc. 16 at 2).

### IV.   Analysis

At Step One, the ALJ determined that Simpson had "not engaged in substantial gainful activity since April 29, 2011, the application date." (R. 29).  At Step Two, the ALJ determined that Simpson had the following severe impairments: hypertension; sleep apnea; obesity; diabetes mellitus; bipolar disorder; depression; anxiety; attention deficit disorder; and panic disorder.  (R. 29).  At Step Three, the ALJ found that Simpson did not have an impairment or combination of

impairments that meets or equals the severity of the specified impairments in the

Listing of Impairments.  (R. 29-31).  Simpson does not challenge any of the ALJ's

determinations at Steps One through Three.  Her claims of error concern the ALJ's

analysis in Step Four.[6]

> At Step Four,
>
> the ALJ must assess: (1) the claimant's residual functional capacity
> ("RFC"); and (2) the claimant's ability to return to her past relevant
> work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the
> regulations define RFC as that which an individual is still able to do
> despite the limitations caused by his or her impairments. 20 C.F.R. §
> 404.1545(a). Moreover, the ALJ will "assess and make a finding about
> [the claimant's] residual functional capacity based on all the relevant
> medical and other evidence" in the case. 20 C.F.R. § 404.1520(e).
> Furthermore, the RFC determination is used both to determine
> whether the claimant: (1) can return to her past relevant work under
> the fourth step; and (2) can adjust to other work under the fifth
> step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will
> conclude that the claimant is not disabled. 20 C.F.R. §
> 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past
> relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant
> work, the ALJ must determine the claimant's RFC using all relevant
> medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That
> is, the ALJ must determine if the claimant is limited to a particular
> work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the
> claimant's RFC and determines that the claimant cannot return to her
> prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Simpson had the RFC to perform "a reduced range

---

[6] Moreover, though Simpson claimed at the administrative level "that she is disabled by her combination of physical and mental impairment," (R. 32), she has raised no claim of error with this Court concerning the Commissioner's decision as to her physical impairments.

of 'light work' as defined in 20 C.F.R. § 416.967(b)."[7]  More specifically, the ALJ found that Simpson could lift and carry up to 20 pounds occasionally and 10 pounds frequently; that in an 8-hour workday she could sit, stand, and walk up to 6 hours; that she could frequently use her upper and lower extremities to push and pull; that he should frequently bend, balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; that she is precluded from climbing ladders, ropes, and scaffolds; that she could frequently reach overhead; that she can continuously handle, finger, and feel; that she is precluded from exposure to extreme heat and cold and from work around unprotected heights or dangerous machinery; that she is able to perform simple routine tasks involving no more than simple, short instructions and simple work-related decisions with few work place changes; that she could occasionally interact with the general public; and that she could sustain concentration and attention for 2-hour periods.  (R. 31-32).

## A.    Claim 2 (Credibility Determinations)

When a claimant attempts to establish disability through his own testimony concerning pain or other subjective symptoms, [courts] apply a three-part test, which requires "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the

---

[7] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations…Each classification…has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4.  "Light work is defined as work that 'involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.'…The regulations further state that '[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.' " *Id.* n.5 (quoting 20 C.F.R. § 404.1567(b), which is identical to § 416.967(b)).

claimed pain." *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam).

If the record shows that the claimant has a medically determinable impairment that could reasonably be expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and his doctors. *Id.* § 404.1529(c)(1)—(2). The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or symptoms. *Id.* § 404.1529(c)(3). The ALJ then will examine the claimant's statements regarding his symptoms in relation to all other evidence, and consider whether there are any inconsistencies or conflicts between those statements and the record. *Id.* § 404.1529(c)(4).

"After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) (per curiam). The ALJ must explicitly and adequately articulate his reasons if he discredits subjective testimony. *Id.*

*Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 939-40 (11th Cir. Mar. 27, 2014) (per curiam) (unpublished).

"Although this circuit does not require an explicit finding as to credibility, the implication must be obvious to the reviewing court.  The credibility determination does not need to cite particular phrases or formulations[,]" *Dyer*, 395 F.3d at 1210 (citation and quotations omitted), and " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court]

to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted)). "[C]redibility determinations are the province of the ALJ, *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005), and [a court] will not disturb a clearly articulated credibility finding supported by substantial evidence, *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995)." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

Here, the ALJ expressly considered Simpson's "subjective complaints of anxiety, panic attacks, depression, inability to concentrate and other mental health symptoms" but found them "not fully credible," explaining:

> The record reflects that prescribed medications have been relatively effective in controlling the claimant's symptoms with occasional episodes of exacerbation due to the claimant's failure to take her medication as prescribed. (Exhibits 6F, 15F, 20F, 22F, 24F). [Treating psychiatrist ]Dr. Davis generally recommended follow up treatment approximately every two months, which suggests that the claimant's symptoms are adequately controlled and not so severe as to warrant additional treatment. (Exhibits 6F, 15F, 20F, 24F). The claimant has not required inpatient psychiatric treatment since the application date. The claimant's activities of daily living are also inconsistent with her complaints of disability. The claimant lives alone, is able to perform her household chores and cooking, cares for her pet dog, and attends church on a regular basis. (hearing testimony and Exhibit 5E). During her consultative evaluation with Dr. Wyatt, he found the claimant to be "very pleasant and informative" and to have speech that is audible, understandable and sustainable. (Exhibit 10F). Specifically regarding attention deficit disorder, the undersigned notes that the claimant did not, in her disability report, claim that attention deficit disorder was causing her to be disabled. (Exhibit 2E).

(R. 35).

Initially, the ALJ appears to have considered Simpson's noncompliance with her prescribed medications in assessing her credibility as to the severity of her mental impairments.  The Commissioner may deny benefits "when a claimant, without good reason, fails to follow a prescribed course of treatment that could restore her ability to work." *McCall v. Bowen*, 846 F.2d 1317, 1319 (11th Cir. 1988) (citing 20 C.F.R. § 416.930).  *Accord, e.g., Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("The regulations provide that refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability. *See* 20 C.F.R. § 416.930(b).").  However, Simpson argues, both in her brief and at oral argument, that the ALJ failed to consider that sometimes her inability to obtain transportation or her "lack of resources has…prevented her from obtaining her medications" (Doc. 16 at 20); indeed, Simpson testified that her failure to obtain her medications was sometimes due to  her lack of money to purchase them or because she could not get a ride to pick them up.  (R. 32, 53-54).[8]

An "ALJ may not draw an adverse inference from a claimant's lack of medical treatment without first considering the claimant's explanation for his failure to seek treatment." *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. Apr. 27, 2011) (per curiam) (unpublished) (citing Social Security Regulation (S.S.R.) 96–7p at  7 [9] )).  Moreover, the Eleventh Circuit has "held that…'poverty excuses

---

[8] Simpson claims she is unable to drive herself due to panic attacks, rather than lack of an automobile or other financial reasons.  (R. 32, 53-54).

[9] Simpson raised SSR 96-7p at oral argument.  " 'Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.'  *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9, 110 S. Ct.

noncompliance.' " *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (per curiam) (quoting *Dawkins*, 848 F.2d at 1213). "[W]hen an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment." *Id.* (citing *Dawkins*, 848 F.2d at 1214). As occurred here, "[t]he claimant in *Dawkins* testified at the administrative hearing that she was unable to take her prescribed medication because she could not always afford to refill her prescription." *Id.* However, the ALJ made no determination as to Simpson's ability to afford her medications, nor does her opinion account for Simpson's claimed inability to obtain transportation to fill her prescriptions.

Nevertheless, the ALJ's credibility determination may still be affirmed if other valid reasons, supported by substantial evidence, are present. *See id.* ("In denying benefits, the ALJ[ in *Dawkins*] relied 'primarily if not exclusively' on evidence pertaining to the claimant's noncompliance with prescribed medical treatment. [848 F.2d] at 1212. On appeal, we reversed and remanded the case, concluding that, because the ALJ's finding that claimant was not disabled was 'inextricably tied to the finding of noncompliance,' the ALJ had erred by failing to consider the claimant's ability to afford the prescribed medical treatment. *Id.* at 1214. []This case is distinguishable from *Dawkins* because, unlike in *Dawkins,* the

---

885, 891 n.9, 107 L. Ed. 2d 967 (1990) (internal quotations omitted). Although SSA rulings are not binding on this Court, we accord the rulings deference. *See Fair v. Shalala*, 37 F.3d 1466, 1468–69 (11th Cir. 1994)." *De Olazabal v. Soc. Sec. Admin., Com'r*, 579 F. App'x 827, 832 (11th Cir. Sept. 4, 2014) (per curiam) (unpublished).

ALJ's determination that Ellison was not disabled was not significantly based on a finding of noncompliance."); *Brown*, 425 F. App'x at 817 ("[I]f the claimant's failure to follow medical treatment is not one of the principal factors in the ALJ's decision, then the ALJ's failure to consider the claimant's ability to pay will not constitute reversible error. *See* [*Ellison*, 355 F.3d at 1275] (holding that ALJ's failure to consider claimant's ability to pay was not reversible error because the ALJ's decision primarily was based on factors other than the claimant's failure to obtain medical treatment)."). The Court finds this to be the case here.

As occurred here, "[t]he ALJ may consider the claimant's daily activities when evaluating his subjective symptoms," though "a claimant's admission that he participates in daily activities for short durations does not necessarily disqualify him from a disability. 20 C.F.R. § 404.1529(c)(3)(i); *see Lewis,* 125 F.3d at 1441 (11th Cir. 1997) (noting that the claimant's successful completion of a six-minute treadmill exercise was not necessarily indicative of his ability to work, and that the fact that he did housework and went fishing was not inconsistent with the limitations recommended by his treating physicians)." *Crow v. Comm'r, Soc. Sec. Admin.*, 571 F. App'x 802, 807 (11th Cir. July 7, 2014) (per curiam) (unpublished). *See also Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. Aug. 30, 2010) (per curiam) (unpublished) ("Although a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir.1997), that does not mean it is improper for the ALJ to consider a claimant's daily

activities at all. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (specifically listing the claimant's daily activities as one of the factors to consider in evaluating the claimant's symptoms).").[10]   Here, Simpson's daily activities do not appear dramatically inconsistent with the level of impairment to which she testified, and the Commissioner conceded at oral argument that, standing alone, consideration of her daily activities is not a sufficient reason to discredit Simpson.   However, the ALJ also properly considered the conservative treatment plan of Simpson's treating psychiatrist in assessing Simpson's credibility, finding that it did not correspond to the severity of her symptoms Simpson claimed.   *See Sheldon v. Astrue*, 268 F. App'x 871, 872 (11th Cir. Mar. 10, 2008) (per curiam) (unpublished) ("A doctor's conservative medical treatment for a particular condition tends to negate a claim of

---

[10] *Cf. Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) ("The Appeals Council's second justification—that her daily activities and her ability to care for her personal needs have not been significantly affected—is not supported by substantial evidence on the record as a whole. This explanation is apparently based on Parker's testimony that she could do simple household chores. The Appeals Council, however, ignored other evidence that her daily activities have been significantly affected. For example, she testified that she had to lie down every two hours, and Dr. Wheeler discussed the problems she had experienced at work (difficulty in standing, fatigue and blurred vision)." (record citations omitted)); *Smith v. Califano*, 637 F.2d 968, 971-72 (3d Cir. 1981) ("The ALJ seems to have relied heavily on the fact that claimant had testified that he had full use of his hands, arms and legs, does shopping and last fall went hunting twice.  Yet, statutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity…It is well established that sporadic or transitory activity does not disprove disability." (citation and quotation omitted)); *Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir. 1989) ("[A]n applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See *Yawitz v. Weinberger,* 498 F.2d 956, 960 (8th Cir. 1974). What counts is the ability to perform as required on a daily basis in the 'sometimes competitive and stressful' environment of the working world. *Douglas v. Bowen,* 836 F.2d 392, 396 (8th Cir. 1987) (quoting *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc)).").

disability." (citing *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996)); *Brown*, 425 F. App'x at 817 ("[E]ven if we were to accept Brown's interpretation that the ALJ drew an adverse inference from the fact that he did not seek treatment between November 2007 and May 2008, Brown has not shown reversible error. The main reason why the ALJ discredited Brown's testimony was that his assertions of disabling pain were not supported by the medical evidence in the record, which described a relatively conservative pattern of treatment. Because the gap in medical treatment did not play a major role in the ALJ's decision, any error in considering that gap in treatment was harmless."). The ALJ also noted that Simpson had failed to list attention deficit disorder in her application for SSI benefits, suggesting that she did not consider it to be significant at the time. (R. 35).

The Eleventh Circuit has affirmed an ALJ's credibility determinations, even in the absence of explicitly stated reasons for discrediting, when the record adequately reflects that the ALJ considered the claimant's allegations in light of the record as a whole. *See Brown v. Comm'r of Soc. Sec.*, 442 F. App'x 507, 513-14 (11th Cir. Oct. 6, 2011) (per curiam) (unpublished) ("Here, the ALJ sufficiently assessed Brown's testimony as to her limitations. The ALJ was not required to make any explicit credibility finding because the decision includes a thorough discussion of Brown's allegations in light of the record as a whole. *See Dyer*, 395 F.3d at 1210. Specifically, the ALJ found that Brown had moderate limitations in daily living activities, social functioning, and concentration based on her testimony that she had trouble completing chores and getting along with others, the fact that she had not

had any 'serious incident[s]' with others, and the fact that she had not been hospitalized during the relevant period. Based on these factors, the ALJ determined that Brown was able to work, despite her depression and anxiety, so long as she had no interaction with the general public and only occasional interaction with coworkers and supervisors. The implication of the ALJ's credibility finding—that Brown's complaints were 'not fully credible'—is thus clear to us. *See Dyer,* 395 F.3d at 1210. That is, it is clear that the ALJ found Brown's complaints credible, but that he found her complaints as to the severity of her limitations not credible. Therefore, the ALJ considered Brown's subjective complaints in light of the record as a whole and adequately explained his decision not to fully credit Brown's alleged limitations on her ability to work. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)."); *Weekley v. Comm'r of Soc. Sec.*, 486 F. App'x 806, 809 (11th Cir. Aug. 13, 2012) (per curiam) (unpublished) ("Here, the ALJ did not err by failing to explicitly cite to our three-part standard because the record reflects that the ALJ considered and cited to the regulations on which the standard is based and applied the standard correctly. Furthermore, substantial evidence supports the ALJ's determination that Weekley's subjective complaints of pain were not credible. When making a credibility determination, the ALJ must show that he considered the claimant's 'medical condition as a whole,' and in this case, the ALJ's analysis of the objective medical evidence and other evidence in the record complies with this requirement. *See Dyer,* 395 F.3d at 1210."). Here, the ALJ's detailed discussion of the objective medical evidence of record sufficiently indicates that she considered Simpson's medical

condition as a whole in making her credibility determination.

Considered in conjunction with her express reasons for discrediting Simpson, *see supra*, the Court finds that the Commissioner's decision in this regard is supported by substantial evidence. Accordingly, the Commissioner's decision is due to be affirmed as to the error alleged in Claim 2.

### B.    Claim 1 (Rejecting Treating Physician Opinion)

" 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. Sept. 30, 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). "[T]he ALJ must state with particularity the weight given to

different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)). However, the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth*, 703 F.2d at 1240.  *Accord, e.g.*, *Anderson v. Comm'r of Soc. Sec.*, 427 F. App'x 761, 763 (11th Cir. 2011) (per curiam) (unpublished).

"A 'treating source' (i.e., a treating physician) is a claimant's 'own physician, psychologist, or other acceptable medical source who provides[], or has provided[],[ the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant].' " *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. May 2, 2006) (per curiam) (unpublished) (quoting 20 C.F.R. § 404.1502).  "Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.' " *Winschel*, 631 F.3d at 1179 (quoting *Lewis*, 125 F.3d at 1440).  "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'  With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Id.* (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted).  *See also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings.

19

Further, the Secretary may reject the opinion of any physician when the evidence supports a contrary conclusion." (citation omitted)).

Simpson argues that the ALJ erred in rejecting the medical opinions her treating psychiatrist, Dr. George Davis. The ALJ summarized Dr. Davis's opinions as follows:

> In his first opinion[, a Medical Source Opinion Form dated May 2012,] Dr. Davis found that the claimant has marked limitations in using judgment in detailed or complex work-related decisions, marked limitations in dealing with changes in routine work setting, marked limitations in understanding, remembering and carrying out detailed or complex instructions, and marked limitations in maintaining attention, concentration or pace for periods of at least 2 hours. (Exhibit 18F[ (R. 365-367)]). Dr. Davis opined that the claimant has a short attention span, is easily distracted, and has an inability to concentrate. (Exhibit 18F). Dr. Davis also noted that the claimant has chronic anxiety with panic attacks, is uncomfortable around people, isolates herself, and is uncomfortable away from home. (Exhibit 18F). Dr. Davis stated that the claimant has had mood swings and chronic depression over the past 11 years, with only partial response to various medications tried over time. (Exhibit 18F). Dr. Davis diagnosed the claimant with bipolar disorder depressed and adult attention deficit disorder. (Exhibit 18F). According to Dr. Davis, the claimant manifests signs and symptoms of an ongoing anxiety problem with recurrent panic attacks. At the time of the opinion, Dr. Davis stated that the claimant was being treated with a mood stabilizer, an antidepressant, and a tranquilizer with only partial success. (Exhibit 18F). Dr. Davis opined that the claimant is unable to work due to her "disabling" mental illnesses. (Exhibit 18F). Subsequently, in his statement made in September 2012, Dr. Davis noted that the claimant "continues to have symptoms of her mental disorder rendering her incapable of maintaining employment." (Exhibit 21F[ (R. 374)]). Dr. Davis also noted that the claimant had been compliant with her long term treatment but "only partially responsive to a variety of medication aimed at giving her adequate relief so that she can function in the work place." (Exhibit 21F). Dr. Davis opined that the claimant is not able to function in the work place. (Exhibit 21F).

(R. 36-37).

The ALJ assigned "no weight" to Dr. Davis's opinions (R. 36), explaining:

> Dr. Davis's treatment records…are inconsistent with the opinion he offers in this case.  (Exhibits 6F, 15F, 20F, 24F).  From time to time, Dr. Davis notes in the claimant's treatment records that she is doing well.  For example, in January 2011, it was noted that the claimant was doing fairly well.  (Exhibit 6F).  Again, in June 2011, Dr. Davis stated that the claimant was doing "alright" and that she was more stable than ever on her present medication.  (Exhibit 15F).  In August 2011, Dr. Davis stated that the claimant had run out of her medication and gotten depressed but that she was "improving once back on the meds."  (Exhibit 15F).  In May 2012, it was noted that Inderal was helping.  (Exhibit 20F).  In September 2012, Dr. Davis noted that the claimant "got detached" when she was off of Abilify for 3 weeks, suggesting that the medication is helping her when she takes it properly.  (Exhibit 24F).  However, the claimant admittedly runs out of her medication around 3 times a year.  (hearing testimony).  Dr. Davis consistently assigned the claimant GAF scores of 65, with the exception of once in March 2012.  (Exhibits 6F, 15F).  A GAF score of 65 is indicative of only mild symptoms or mild in occupational or social functioning.  Dr. Davis's treatment records consist primarily of the claimant's subjective complaints with very few objective findings.  (Exhibits 6F, 15F, 20F, 24F).  Further, Dr. Davis's treatment records reflect short visits with the claimant, with each visit generally lasting less than 20 minutes.  (Exhibits 15F, 6F).  Despite the opinion he offers, Dr. Davis has not recommended hospitalization for the claimant's mental health issues.  Dr. Davis's opinion is also inconsistent with the fact that the claimant lives alone, performs her own household chores, cooks simple meals, cares for her dog, grocery shops and attends church.  (hearing testimony and Exhibit 5E).

(R. 37).

The ALJ expressly articulated "good cause" for rejecting Dr. Davis's opinions, finding that they were not bolstered by the evidence and were inconsistent with the doctor's own medical records.  *See Winschel*, 631 F.3d at 1179.  As she did when addressing the credibility of Simpson's subjective testimony, *see supra*, the ALJ properly considered the conservative nature of Dr. Davis's treatment, noting that it consisted of short visits with Simpson every two months.  *Cf. Petteway v. Comm'r of*

*Soc. Sec.*, 353 F. App'x 287, 290 (11th Cir. Nov. 18, 2009) (per curiam) (unpublished) ("[G]ood cause existed to reject the opinion because Dr. Leber's conclusion was inconsistent with Petteway's medical records, which showed infrequent medical visits at intervals of two or more months."); *Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 877 (11th Cir. June 24, 2014) (per curiam) (unpublished) ("Dr. Davina–Brown's physical examinations of Harrison were consistently unremarkable, and she never found that Harrison suffered from any of the paradigmatic symptoms frequently associated with the most severe cases of fibromyalgia, such as joint swelling, synovitis, or tender trigger points. For example, Dr. Davina–Brown prescribed medications for Harrison's chronic pain but never recommended more aggressive treatment, such as visits to the emergency room for pain or trigger point injections. The conservative and routine nature of Dr. Davina–Brown's treatment plan suggests that Harrison's impairments—while significant—were not so severe that Harrison could not perform any job duties.").  The ALJ thoroughly discussed Dr. Davis's treatment records prior to weighing his opinions (*see* R. 34-35), which were replete with notations that Simpson was "doing well," "alright," "stable," etc., and that her medications were working.  *Cf. Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. Apr. 11, 2011) (per curiam) (unpublished) ("The ALJ articulated specific reasons for not giving Dr. Mian's opinion controlling weight, noting that the opinion was inconsistent with Jarrett's treatment records and her ability to perform work between 1999 and 2004. Indeed, Dr. Mian's treatment records show numerous instances in which he indicated that Jarrett's medications

were working, she was satisfied with the medications, her condition had improved, and she was stable."). The ALJ also noted that Dr. Davis consistently assigned Simpson GAF ("global assessment of functioning") scores indicative of only mild symptoms, with only one GAF score indicating more serious impairments.[11]

In arguing Claim 1 in her brief, Simpson did not address at all the ALJ's reference to Simpson's GAF scores in rejecting Dr. Davis's opinion. However, at oral argument, Simpson's counsel downplayed the significance of such scores, and indeed, "the Commissioner has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.' " *Lacina v. Comm'r, Soc. Sec. Admin.*, No. 14-11051, 2015 WL 1453364, at *6 (11th Cir. Apr. 1, 2015) (per curiam) (unpublished) (quoting 65 Fed. Reg. 50746, 50764–65). *Accord, e.g.,*

---

[11]     "Mental health professionals use GAF scores to rate a patient's social, occupational and psychological functioning." *Luterman v. Comm'r of Soc. Sec.*, 518 F. App'x 683, 684 (11th Cir. May 2, 2013) (per curiam) (unpublished). "A GAF score is a subjective determination that represents 'the clinician's judgment of the individual's overall level of functioning.' The GAF scale accounts for psychological, social, and occupational limitations, but not environmental or physical impairments." *Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 613 (11th Cir. Feb. 11, 2015) (per curiam) (unpublished) (citing *Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 32, 34 (4th ed., Text Revision 2000)) (citation omitted).

     "The GAF is a 100–point scale divided into 10 numerical ranges, which permits clinicians to assign a single-ranged score to a person's psychological, social, and occupational functioning." *Stone v. Comm'r of Soc. Sec.*, 586 F. App'x 505, 509 n.2 (11th Cir. Sept. 26, 2014) (per curiam) (unpublished) (citing *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012) (citing *Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* 32, 34 (Text Revision 4th ed. 2000))). "GAF scores of 41 to 50 indicate serious symptoms (suicidal ideation, severe obsessional rituals, or frequent shoplifting) or any serious impairment in social, occupational, or school functioning (having no friends or being unable to keep a job); scores of 51 to 60 indicate moderate symptoms (flat affect and circumstantial speech or occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (having few friends or conflicts with peers or coworkers)." *Id.* "GAF scores between 61 and 70 reflect mild symptoms, with some difficulty in social and occupational functioning." *Wind v. Barnhart*, 133 F. App'x 684, 687 n.1 (11th Cir. June 2, 2005) (per curiam) (unpublished) (citing *American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000)).

*Nye v. Comm'r of Soc. Sec.*, 524 F. App'x 538, 543 (11th Cir. July 26, 2013) (per curiam) (unpublished); *Luterman v. Comm'r of Soc. Sec.*, 518 F. App'x 683, 688 (11th Cir. May 2, 2013) (per curiam) (unpublished) ("[T]he Social Security Commission had declined to endorse the use of GAF scores in social security disability programs because they have no direct correlation to the severity requirements of the mental disorders listings. *See Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)."). "Similarly, the Eighth Circuit has recognized that a GAF score may have little or no bearing on a claimant's social and occupational functioning." *Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 613 (11th Cir. Feb. 11, 2015) (per curiam) (unpublished) (citing *Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010)). Nevertheless, "[a]s the Sixth Circuit has observed," while "not essential to the RFC's accuracy," "GAF scores may be helpful in formulating a claimant's RFC…" *Id.* (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). Accordingly, the ALJ did not err in attaching at least some significance to Simpson's GAF scores. *See Jarrett*, 422 F. App'x at 873-74 (noting that claimant's GAF scores were inconsistent with the marked limitations assigned in treating physician's opinion).

The ALJ also rejected Dr. Davis's opinions because they "consist primarily of the claimant's subjective complaints with very few objective findings." Simpson has cited to opinions from other Alabama federal district courts[12] that, relying on

---

[12] Specifically: *Matthews v. Barnhart*, 347 F. Supp. 2d 1093 (M.D. Ala. 2003); *Haag v. Barnhart*, 333 F. Supp. 2d 1210 (N.D. Ala. 2004); *Barber v. Barnhart*, 459 F. Supp. 2d 1168

persuasive authority from other circuits, have suggested that the opinions of mental health professionals should be given more deference because they are, by the very nature of the field, often based largely on the subjective complaints of claimants. (*See* Doc. 16 at 17).   Nevertheless, the Eleventh Circuit has repeatedly affirmed the Commissioner's decisions to reject the opinions of treating mental health professionals because they were based largely on the subjective testimony of claimants with little objective support.  *See Harrison*, 569 F. App'x at 878 ("We also conclude that adequate evidence supported the ALJ's decision to give minimal weight to the opinions of Dr. DeLuca, Harrison's psychiatrist. Like Dr. Davina–Brown, Dr. DeLuca described Harrison as 'totally and permanently disabled' because she suffered from bipolar disorder with psychotic features such as delusions. He did not explain, however, why this diagnosis prevented her from performing any job-related activities. Additionally, Dr. DeLuca's records did not contain any objective findings regarding Harrison's limitations or examination results supporting his conclusions.  Because of this lack of evidentiary support, the ALJ was not required to give great weight to Dr. DeLuca's conclusory statements regarding Harrison's ability to work.");  *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. Jan. 16, 2013) (per curiam) (unpublished) ("Here, there is substantial evidence supporting the ALJ's conclusion that there was good cause to afford more weight to the opinion of Dr. Goren, a nonexamining board-certified neurologist, than to the opinions of Dr. Vernacchio and Dr. Kantor, who were Forsyth's treating physicians. As explained by the ALJ and the magistrate judge,

(N.D. Ala. 2006).

Vernacchio did not conduct a proper neurological exam of Forsyth, and Kantor relied too significantly on Forsyth's subjective reports."); *Anderson v. Comm'r, Soc. Sec. Admin.*, 441 F. App'x 652, 653 (11th Cir. Sept. 26, 2011) (per curiam) (unpublished) ("With respect to the opinion of Dr. Beaty, a psychiatrist who treated Anderson for two years, the ALJ provided specific, adequate reasons for not giving his opinion controlling weight, and those reasons were supported by substantial evidence. For example, although Beaty stated that his functional assessment of Anderson was based on two years of clinical observation, his findings were not supported by objective evidence: his treatment notes for Anderson primarily provided only the diagnosis or simply documented Anderson's subjective complaints during each visit.").[13]

Finally, an "ALJ is not required to give a treating physician's opinion considerable weight if the claimant's own testimony regarding her daily activities contradicts that opinion. *See Phillips,* 357 F.3d at 1241 (finding that an ALJ's decision to give a treating physician's opinion little weight was supported by substantial evidence because the claimant's admissions concerning her activities were at odds with the treating physician's assessment)." *Leiter v. Comm'r of Soc. Sec. Admin.*, 377 F. App'x 944, 949 (11th Cir. May 6, 2010) (per curiam) (unpublished). *See also Crow v. Comm'r, Soc. Sec. Admin.*, 571 F. App'x 802, 806-07

---

[13] The ALJ was also not required to accept Dr. Davis's opinion that Simpson had a "disabling" mental illness and was "not able to function in the work place" because "the resolution of that issue is reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). 'A statement by a medical source that [a claimant is] "disabled" or "unable to work" does not mean that [the Commissioner] will determine that [the claimant is] disabled.' *Id.* §§ 404.1527(d)(1), 416.927(d)(1)." *Forsyth*, 503 F. App'x at 894.

(11th Cir. July 7, 2014) (per curiam) (unpublished) ("[E]vidence of Crow's daily activities also provided good cause to discount his treating physician's opinion. *Phillips*, 357 F.3d at 1241."). Here, the ALJ found Dr. Davis's opinion to be inconsistent with Simpson's testimony of her daily activities, and Simpson has offered no persuasive argument why this finding is not due deference.

In sum, the Court finds that the Commissioner stated good cause, supported by substantial evidence, for rejecting the opinions of Dr. Davis. Accordingly, the Commissioner's decision is due to be affirmed as to the error alleged in Claim 1.

## V.    Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued May 15, 2014, denying Simpson's application for SSI benefits is **AFFIRMED** under 42 U.S.C. § 1383(c)(3).

Final judgment shall issue separately in accordance with this Order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 29th day of May 2015.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

27